IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRADLEY JANIKOWSI, | ) |
| | ) Case Nos. 13 C 7006, 16 C 10915, |
| | ) 16 C 10916 and 17 C 7093 |
| Plaintiff, | ) |
| | ) District Judge Wood |
| v. | ) Magistrate Judge Schenkier |
| | ) |
| COOK COUNTY, ILLINOIS, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

In these four cases, plaintiff asserts various claims under 42 U.S.C. §1983 based on conduct that allegedly occurred while he was in the custody of the Cook County Department of Corrections. In this Report and Recommendation, we consider defendants' oral motion to enforce a settlement that they claim was reached during a Court-mediated settlement conference in all four cases that took place on March 15, 2019. Plaintiff has filed a consolidated opposition to the motion (Case No. 16 C 10915: doc. # 84), defendants have filed a reply in support of the motion (Case No. 16 C 10915: doc. # 86), and plaintiff has filed a sur-reply (Case No. 16 C 10915: doc. # 94). In addition, plaintiff has filed a motion to strike defendants' reply (Case No. 10915: doc. # 89).

For the reasons that follow, we respectfully recommend that defendants' motion to enforce the settlement be granted, and that plaintiff's motion to strike be denied.

1

## I.

We begin with the procedural history relevant to the motion. On September 24, 2018, the district judge referred Case No. 16 C 10916 to this Court for a settlement conference (doc. # 36). During a status hearing with this Court on October 9, 2018, defense counsel and plaintiff (who is proceeding *pro se* in that case) advised the Court that plaintiff had two other pending cases – Case Nos. 13 C 7006 and 16 C 10915 – in which plaintiff was represented by recruited counsel. We directed defense counsel to speak with plaintiff's counsel in those other two cases to determine if they wished to participate in a global settlement conference covering all three cases (Case No. 16 C 10916: doc. # 38).

We held another status conference on November 29, 2018 (Case No. 16 C 10916: doc. # 46), at which time the Court was notified that plaintiff has a fourth case pending in the Court: Case No. 17 C 7093, on which he is proceeding *pro se*. The Court was informed that plaintiff and defendants wished to convene a settlement conference involving all four cases, although in one of the cases (Case No. 16 C 10915) plaintiff wanted to have a ruling by the district judge on certain matters before proceeding with a conference. Thereafter, at a status hearing on December 19, 2018, we set a schedule for the exchange of settlement letters and we set a settlement conference to take place in all four cases on March 15, 2019 (Case No. 16 C 10916: doc. # 47).

Prior to the conference, on January 15, 2019, the magistrate judge presiding in Case No. 17 C 7093, who had scheduled a settlement conference in that case, struck her scheduled settlement conference in view of the fact that we would be "conducting a global settlement conference in all of Plaintiff's pending cases" (Case No. 17 C 7093: doc. # 34). On March 15,

2019, shortly after the conclusion of the settlement conference, the district judge entered formal referral orders in the remaining two cases: Case No. 13 C 7006 (doc. # 123) and Case No. 16 C 10915 (doc. # 74). However, there is no doubt that the parties understood that the March 15, 2019 settlement conference would cover all four cases. In his preconference settlement letter, plaintiff addressed all four cases and made settlement proposals in each case except for Case No. 16 C 10915, as there had not yet been a ruling on the matters that plaintiff wished to have decided before engaging in settlement talks.

The settlement conference took place on March 15, 2019 as scheduled. Plaintiff participated by a live videoconference feed into our courtroom, representing himself in Cases Nos. 16 C 10916 and 17 C 7093; plaintiff's recruited attorneys were present in the courtroom, and represented him in the discussions concerning Cases Nos. 13 C 7006 and 16 C 10915. Two days before the conference, the district judge ruled on the pending motions in Case No. 16 C 10915 (doc. # 72), and as a result, plaintiff added a specific settlement proposal for that case. The settlement conference lasted for approximately three and one-half hours, with an initial group session followed by a series of separate back-and-forth meetings the Court held with each side. At the conference, the parties reached agreement on the monetary amount of the settlement ($20,000.00 for all four cases), as well as on (a) a general release that would include a claim plaintiff was contemplating, but had not filed, concerning a hand injury; (b) confidentiality; and (c) a written settlement document that would use the form typically used by the County in the settlement of cases brought by incarcerated persons. In the presence of all parties and lawyers, the Court recited those items as setting forth the material terms of the agreement that was reached, and all parties – including plaintiff – verified that they agreed to those terms.

At no time during the settlement conference did plaintiff, defendants or their respective counsel state that the agreement was not binding unless and until it was reduced to writing. In addition, at no time during the settlement conference did plaintiff appear to be in any distress or fail to understand the nature of the proceedings; nor did any of his attorneys express any concern about plaintiff's capacity to participate in the conference or to reach an agreement. To the contrary, at all times plaintiff was an active and engaged participant in the discussions.

Thereafter, in a status report filed on April 11, 2019 in Case No. 16 C 10915 (doc. # 76), but not in the other cases, plaintiff's counsel reported that upon reflection and review of the settlement document tendered by the defense on March 19, 2019, plaintiff "no longer wishes to consummate the proposed global settlement agreement." We convened a status hearing on April 23, 2019 to discuss the matter, and at that time, one of plaintiff's recruited counsel in Case No. 16 C 10915 stated that plaintiff had communicated his misgivings about the settlement to them "the first business day afterwards" (Case No. 16 C 10915: doc. # 85, Tr. at 4) – which would have been on March 18, 2019, before any draft of the written agreement had been provided to plaintiff and his counsel. Indeed, plaintiff's counsel stated unequivocally that plaintiff "changed his mind even before we received the writing" (*Id.* at 5). Again, at no time during this status hearing did plaintiff or his recruited counsel raise any question about plaintiff's ability to meaningful participate in the settlement conference or his competence to reach an agreement (*see generally* Case No. 16 C 10915: doc. # 85).

## II.

A settlement agreement "is enforced just like any other contract." *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002). That is true not only for written

4

settlement agreements; federal courts have the inherent power to enforce oral settlement agreements where "'there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement.'" *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007), quoting *Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir. 1995). Whether there was a meeting of the minds "depends on the parties' objective conduct, not their subjective beliefs." *Dillard*, 483 F.3d at 507. Moreover, the meeting of the minds need not encompass every single element of the settlement; rather, there must be a "meeting of the minds on all material terms." *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997 (7th Cir. 2001).

Here, there is no doubt that as of the conclusion of the settlement conference on March 15, 2019, there was a meeting of the minds between plaintiff and defendants on the material terms of the settlement for all four cases. They reached agreement on the monetary amount; on the inclusion of a confidentiality provision; on the scope of the release to be provided; and on the form of the documentation that would be used for the written settlement agreement. In the presence of all parties and lawyers during a joint concluding session on March 15, the Court stated that those were the material terms of the agreement and asked the parties to verify that they each agreed to them. All the participants in the conference agreed that these were the material terms and that nothing important had been omitted. Defendants expressed their agreement to these settlement terms – as did plaintiff himself. The Court's minute entry dated March 15, docketed after the close of the conference, reflected that agreement: it stated that a "[s]ettlement [was] reached in all cases" (Case No. 16 C 10915: doc. # 73, 03/15/19 minute entry).

There is no question that at the conclusion of the conference, all parties had reached agreement on a settlement that encompassed all four cases. The fact that plaintiff shortly

5

thereafter had "misgivings" about the settlement is of no moment; "[a] party to a settlement cannot avoid the agreement merely because he subsequently believed the settlement insufficient . . . that party remains bound by the terms of the agreement." *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986) (internal quotations omitted); *see also Porter v. Chi. Bd. of Ed.*, 981 F. Supp. 1129, 1132 (N.D. Ill. 1997) ("a mere change of mind is not sufficient grounds for setting aside a settlement agreement") (internal quotations omitted).

We have considered plaintiff's arguments that we should not enforce the settlement that he reached and find them unpersuasive. We address each of them below.

### A.

Plaintiff argues that the district judge's March 16, 2019 order in Case No. 16 C 10915, stating that certain motions that were denied without prejudice could be renewed "[i]f the settlement is not consummated" (doc. # 75) constitutes an "edict" by the district judge that no settlement was reached and that the cases must proceed (Pl.'s Opp. at 6-7). We do not read the district judge's order the same way. This order must be read in the context of this Court's March 15 order stating that a settlement was reached (Case No. 16 C 10915: doc. # 73). The statement by the district judge (who did not participate in the settlement conference) surely was not a finding that a settlement was not reached in these cases, in the face of the preceding order of this Court (which did participate in the settlement conference) stating that the cases indeed were settled. In this context, we conclude that the district judge's order referred to what might occur if the parties' obligations under the settlement agreement were not "performed" – which is a standard definition of the word "consummated." Put another way, the district judge's order was not a "get out of settlement free" card that plaintiff is now entitled to play.

## B.

In his effort to avoid enforcement of the settlement, plaintiff invokes the following passage from Local Rule 83.5: "No participant in the ADR proceedings shall be bound by anything done or said at the ADR conference unless a settlement is reached, in which event the settlement shall be reduced to writing or otherwise memorialized and shall be binding upon all parties to the settlement." Plaintiff contends that this language means that an oral agreement is not enforceable unless it is reduced to writing or "otherwise memorialized." That contention is contrary to both the language of the rule and governing authority in this circuit.

*First*, Local Rule 83.5 does not state that the enforceability of a settlement reached by the parties is contingent on the agreement being reduced to writing or otherwise memorialized. Indeed, the requirement that the agreement be reduced to writing or otherwise memorialized presumes that an agreement has been reached; otherwise, there would be nothing to memorialize in the first place. The rule does not state that a failure to put the agreement into writing or "otherwise" memorialize it dooms the agreement that the parties orally reached. Were that the case, a party who seeks to evade an agreement based on later dissatisfaction with the deal he or she struck orally could do so by the simple expedient of refusing to sign a written settlement agreement – which is precisely what plaintiff here seeks to do. Local Rule 83.5 does not empower a party to have this kind of power to veto a deal he or she has reached.

*Second,* the Seventh Circuit has affirmed enforcement of oral settlements reached in the presence of magistrate judges. *See Elustra v. Mineo,* 595 F.3d 699 (7th Cir. 2010); *Gevas v. Ghosh,* 566 F.3d 717 (7th Cir. 2009). In *Elustra,* the magistrate judge concluded that the parties reached an oral settlement at the conclusion of a two-hour conference and recommended to the

7

district judge that the settlement be enforced. 595 F.3d at 702-03. The district judge accepted the recommendation and enforced the oral agreement. *Id.* In affirming that decision, the appeals court noted that while the settlement conference was off the record, the magistrate judge "later reported that 'agreement was reached.'" *Id.* at 703. The appeals court observed that "oral agreements are enforceable (and have been for centuries under the comment law)." *Id.* at 708. The appeals court explained that if the settlement conference is off the record, that does not invalidate the oral agreement that has been reached; instead, "the parties assume the risk that the judge's recollection of the events might differ from their own." *Id.* The Seventh Circuit concluded that the terms of the agreement were definite and certain (a monetary payment in exchange for a dismissal of the suit), and that the parties had not made the agreement contingent on putting the oral agreement into writing. *Id.* at 709. *See also Gevas*, 566 F.3d at 719 (affirming decision by magistrate judge to enforce an off-the-record oral settlement agreement after a party refused to sign the written settlement agreement, explaining that "a judge's failure to record such an understanding does not invalidate the settlement"). These cases, decided well after the adoption of Local Rule 83.5 in September 1999, are further evidence that the local rule was not intended to upend the centuries-old law that makes oral agreements enforceable.[1]

---

[1] *Herrnreiter v. Chicago Housing Authority*, 281 F.3d 634 (7th Cir. 2002), is not to the contrary, and indeed supports our recommendation that the agreement be enforced. In *Herrnreiter*, the parties did not agree on what settlement terms had been reached during a mediation conducted by the Seventh Circuit's Settlement Office. *Id.* at 636. The appeals court noted that there was no contemporaneous record of what took place during the mediation, and as a result, the court could not know whether the parties had reached an agreement to be enforced. The appeals court contrasted that with a situation in which a district judge or magistrate judge conducts a settlement conference, stating that even in the absence of a contemporaneous record of what took place "the district judge or magistrate judge may remember the terms and thus readily enforce the agreement. *Id.* at 637. Here, the Court was present for the settlement conference, knows the terms of the settlement that was reached, and – as did the magistrate judges in *Elustra* and *Gevas* – entered an order after the conference stating that a settlement was reached.

*Third*, as further evidence that Rule 83.5 does not bar enforcement of oral agreements reached before magistrate judges, we note that Internal Operating Procedure 14 was revised in June 2018 to allow referrals to magistrate judges of motions to enforce settlement agreements, but only "if the assigned magistrate judge held the settlement conference." This procedure recognizes that there may be instances (as here) where an alleged settlement was not reduced to writing or put on the record, but the magistrate judge who conducted the settlement conference nonetheless has knowledge about whether a settlement has been reached, and if so, the terms of the settlement.

*Fourth*, we disagree with plaintiff's assertion that there was no memorialization of the terms of the settlement reached during the conference. As stated above, at the conclusion of the conference, in the presence of all parties the Court recited the material terms of the agreement and obtained the assent of all the parties to those terms. The language of Rule 83.5 does not require the memorialization to be in writing or on the record. And, the Court thereafter entered an order on the docket after the conference confirming that a settlement had been reached. While we acknowledge that the better practice would have been to prepare a term sheet or to place the terms of the agreement on the Court's recording system, as *Elustra* and *Gevas* make clear, the failure to have done so does not give plaintiff license to avoid the agreement he reached.[2]

---

[2] Plaintiff's reliance on *Barnett v. Sea Land Service, Inc.*, 875 F.2d 741 (9th Cir. 1989) and *Beazer East v. Mead Corp.*, 412 F.3d 429 (3rd Cir. 2005), for the proposition that there is no settlement unless an oral agreement is reduced to writing, is unpersuasive. In those cases, the appeals courts interpreted rules that required settlement agreements to be placed reduced to writing – but, unlike Local Rule 83.5, the rules at issue in those cases did not provide that agreements could be reduced to writing or "otherwise memorialized." *Barnett*, 875 F.2d at 743-44; *Beazer East*, 412 F.3d at 435. What's more, those out-of-circuit cases do not trump the Seventh Circuit authority providing that oral settlements reached in conferences conducted by magistrate judges are fully enforceable.

## C.

Plaintiff also contends that the agreement he reached during the settlement conference is unenforceable because he lacked the capacity to enter into it. In aid of this argument, plaintiff offers evidence of (1) difficulties he allegedly was experiencing due to medication changes in February 2019, and (2) a change in his psychiatric medications made six days before the March 15 conference.

However, none of the medical records offered by plaintiff show his capacity *on the day of the conference*. Neither plaintiff nor any of his attorneys have offered an affidavit or declaration to support the contention that plaintiff lacked capacity on that day; in the Court's view, they could not do so consistent with the requirements of Federal Rule of Civil Procedure 11. The Court had ample opportunity to observe and interact with plaintiff during the settlement conference. At no time did he exhibit an inability to understand what was transpiring, or that he was operating under any more pressure than is any party who attempts to negotiate an agreement. At no time did plaintiff indicate that he was unable to proceed, or act in any way that suggested an incapacity to understand what was happening or to make intelligent decisions about whether to settle his cases. To the contrary, plaintiff was actively involved in the discussions and negotiations and exhibited a clear understanding of what he negotiated.

Although his attorneys now state that plaintiff "felt unable to withstand the pressure of the three-hour ADR process in order to exercise his will with respect to the contemplated settlement" (Pl.'s Opp. at 7), none of his attorneys said anything of the sort during the settlement conference. Nor did plaintiff's counsel (or plaintiff himself) suggest that plaintiff lacked capacity in the April 11 status report, where plaintiff merely stated that he "no longer wishes to

10

consummate the proposed global settlement agreement" after reviewing the draft written agreement from the defense, or during the April 23 status hearing when counsel stated that plaintiff just "changed his mind" about settling even before he received the draft written agreement.

This is not a situation where plaintiff lacked capacity to reach agreement at the time of the settlement conference. Rather, plaintiff now attempts to conjure a lack of capacity when the real explanation for his attempt to avoid the agreement is a simple case of "buyer's remorse." But, we reiterate that a party to a settlement agreement "cannot avoid the agreement merely because he subsequently believe[s] the agreement insufficient . . . that party remains bound by the terms of the agreement." *Glass*, 788 F.2d at 454-55 (internal quotations omitted); *see also Porter*, 981 F. Supp. at 1132 ("a mere change of mind is not sufficient grounds for setting aside a settlement agreement") (internal quotations omitted).

### III.

We now turn to plaintiff's motion to strike. Local Rule 83.5 states, in relevant part, that "any act or statement made by any party, attorney or other participant [during a settlement conference], shall, in all respects, be privileged and not reported, recorded, placed in evidence, made known to the trial court or jury (without consent of all parties), or construed for any purpose as an admission in the case referred or in any case or proceeding." Plaintiff claims that defendants violated this confidentiality requirement by disclosing in their reply (which they filed under seal) the acts and statements of the parties during the settlement conference and the terms of the oral settlement agreement they moved to enforce. We disagree.

11

Defendants have moved to enforce because they contend that a settlement was reached during the March 15 conference. In order to pursue their motion to enforce, defendants properly set forth the terms of the agreement they contend was reached and that they ask the Court to enforce. In *Herrnreitter v. Chicago Housing Authority*, 281 F.3d 634, 637 (7th Cir. 2002), a case cited by plaintiff, the Seventh Circuit declined to place under seal the terms of the purported settlement agreement that each side sought to enforce. "Now that the agreement itself has become a subject of litigation, it must be opened to the public just like other information . . . that becomes the subject of litigation." *Id.*, citing *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562 (7th Cir. 2000). The *Union Oil* decision, and others like it, recognize that "[w]hat happens in the halls of government is presumptively public business." *Union Oil Co.*, 220 F.3d at 568.

In this case, a discussion of what took place at the settlement conference is important to an assessment of plaintiff's new-found claim of incapacity. Plaintiff cannot assert his lack of capacity during the conference and, at the same time, attempt to conceal information that reveals why the Court finds that position to be baseless. "Any step that withdraws an element of the judicial process from public view makes the ensuring decision look more like fiat, which requires compelling justification." *Union Oil Co.*, 220 F.3d at 568. There is no such compelling justification here. Likewise, the idea that a party's brief cannot disclose the terms of the settlement that the party seeks to enforce is a non-starter. Plaintiff's attempt to read Local Rule 83.5 to require such a result is simply another way of arguing that the oral settlement he reached during the court-conducted mediation is not binding – a contention we already have rejected.

Plaintiff notes that the district judge presiding in these cases was not present during the settlement conference and "thus could not possibly rely on her recollection to craft an order

enforcing the supposed agreement" (Pl.'s Sur-Reply at 3). That is true – and that is precisely why Internal Operating Procedure 14 authorizes a district judge to refer a motion to enforce a settlement agreement to the magistrate judge who in fact was present at the settlement conference and was privy to what occurred. That also is why the briefing before the Court, and the resulting report and recommendation, must set forth what occurred at the settlement conference. There is no other way that the district judge, on review of the report and recommendation if that should be necessary, can know the terms of the agreement that we recommend be enforced.

Finally, plaintiff suggests that defendants included in the reply their understanding of the settlement terms that were reached as an improper way to prompt the Court as to the terms of the agreement (Pl.'s Sur-Reply at 3 n.3). We can assure all parties that the Court is clear on what settlement terms were reached, without any help from defendants. The Court actively participated in the discussions; recited the agreed upon terms at the conclusion of the conference; and obtained the parties' concurrence that those terms in fact were the material terms of the settlement. Significantly, plaintiff offers no disagreement to defendants' account of the settlement terms.

## CONCLUSION

For the foregoing reasons, we respectfully recommend that defendants' oral motion to enforce the settlement agreement be granted, and that plaintiff's motion to strike (Case No. 16 C 10915: doc. # 94) be denied. We recommend that the district judge enforce the parties' settlement in the four cases, which was an agreement that plaintiff would receive $20,000.00 along with (a) a general release that includes a claim plaintiff was contemplating, but had not filed, concerning a hand injury; (b) confidentiality; and (c) a written settlement document in the

form typically used by the County in settlement of cases brought by incarcerated persons.

Specific written objections to this Report and Recommendation may be served and filed within fourteen (14) days from the date that this Order is served. Fed. R. Civ. P. 72(b). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the Report and Recommendation. See *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

**ENTER:**

SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATE: June 27, 2019**